■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOSE CORA, Appellant.— Judgment, Supreme Court, Bronx County, entered March 12, 1974, convicting the defendant after a jury trial, of manslaughter in the first degree and possession of a weapon as a misdemeanor, reversed, on the law, in the exercise of discretion and in the interest of justice and a new trial directed. It is axiomatic that no allusion may be made to the fact that the defendant has failed to avail himself of his right to testify in his own behalf.

(CPL 60.15, subd. 2.) In this matter, there was a colloquy, provoked by defense counsel, in the jury's presence, over an alleged offer by the defendant to take a lie detector test. The prosecutor stated: "Does this defendant wish to have his veracity proven in this courtroom, there's a way to do it." This allusion (see *People* v. *Leavitt*, 301 N. Y. 113, 118), was followed by the Trial Judge's statement "Let him take the stand". True, the Trial Judge thereafter admonished the jurors as follows: "As I told you earlier, no defendant in a criminal case need present any evidence and he, himself, doesn't have to take the stand and you may draw no inference from his failure to do so." The efficacy of such instruction can be questioned (cf. *People* v. *Lombard*, 4 A D 2d 666, 668), but in any event reversible error, which cannot be considered harmless, had already been committed. (*People* v. *McLucas*, 15 N Y 2d 167, 171.) Ordering a new trial does not release the defendant, but merely insures that justice will be done. The Court of Appeals in *People* v. *Catalanotte* (36 N Y 2d 192, 196) has stated that "harmlessness of error is not to be found merely by balancing the evidence in favor of and against the defendant", citing *People* v. *Crimmins* (36 N Y 2d 230). Concur — Stevens, J. P., and Kupferman, J.; Murphy, J., concurs in the following memorandum; and Lane and Nunez, JJ., dissent in the following memorandum by Nunez, J.: Murphy, J. concurring: The only witness to the stabbing was the deceased's girl friend, Barbara Laderman. She was admittedly a heroin addict. On the night of the stabbing she and the deceased had taken cocaine and went to purchase more. While the deceased went into the building Ms. Laderman waited at the wheel of the double parked car. She testified she saw a man named Willis, later identified as the defendant, Jose Cora, and another man walk over to the deceased after he left the building. Following a conversation, the defendant made three "lateral motions from about hip level". She observed this while looking through a window of the car which had in place of glass a piece of cardboard with a four-inch diameter hole in it, and thence through the windows of the parked car. She described the assailant to police as 5 foot 7 inches when, in fact, defendant was 5 foot 11 inches. She neither mentioned the mustache or goatee of defendant. That the jury had difficulty with this evidence is seen from the fact that the case was submitted to them at 11:30 A.M. and at 4:00 P.M. they reported they were "hopelessly deadlocked and cannot reach a decision". The court correctly gave them a supplementary charge and they resumed deliberations. At 5:00 P.M. the jury requested and heard Detective Hogan's and Patrolman Unger's testimony as to Ms. Laderman's initial description of the assailant. At 10:35 P.M. the court informed the jury that "transportation for a hotel downtown" had been arranged if they could not agree on a verdict. The foreman asked for more time and at 11:35 P.M. they returned a verdict of guilty. This court held that the threat to sequester a jury which fails to reach a verdict is coercive and in itself grounds for a new trial. (*People* v. *Hill*, 44 A D 2d 813). Furthermore, there was impermissible bolstering of Ms. Laderman's testimony by the court in informing the jury that "there was a preliminary hearing which this witness testified that this defendant was the defendant who stabbed the deceased." The interests of justice mandate a new trial. Lane and Nunez, JJ. dissenting in memorandum by Nunez, J.: I would affirm. I agree that the Trial Judge's remark "Let him [the defendant] take the stand" was improper, and constituted error under the provisions of both the Federal and our State Constitutions (U. S. Const., Amend. V; N. Y. Const., art. I, § 6). But it was harmless under the test for harmless constitutional error laid down by the Supreme Court of the United States, namely, that there is no reasonable possibility that

the error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt (*Chapman* v. *California*, 386 U. S. 18; *Fahy* v. *Connecticut*, 375 U. S. 85). Our Court of Appeals recently adopted the same test in *People* v. *Crimmins* (36 N Y 2d 230). In *Crimmins* the defendant's failure to testify was brought to the jury's attention directly in summation by the prosecutor. In this case, the statement, while made by the court, was directed at defendant's counsel who provoked it. More than likely, its significance never reached the jury or was completely lost long before they commenced deliberations. The evidence of guilt was clear. Motive was established. The defendant stabbed his victim to death in the presence of the defendant's girlfriend who knew defendant well, having seen him at least 100 times before the fatal occurrence. Furthermore, the court gave prompt and repeated curative instructions to the jury. The error in *Crimmins* came at the conclusion of the trial. The improper statement was made by the prosecutor — a quasi-judicial officer, speaking the last word to the jury at a crucial step of the trial. Its impact upon the fact finders had to be perforce greater than here, where the offhand offensive remark was made to counsel long before submission of the case to the jury. Yet the Court of Appeals held the statement to be harmless and reinstated defendant's manslaughter conviction overturning the Appellate Division ruling which had reversed and ordered a new trial. (*People* v. *Crimmins, supra*.) We are presently engulfed in a wave of violent crime which threatens not only our lives and safety, but the continued existence of our society under law. The right of the defendant to a fair trial is undeniable. He has had it. We should not overlook the rights of defendant's victim and society. The People also deserve a fair trial.